UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BARBARA HAYWOOD,

               Plaintiff,                                 Hon. Robert J. Jonker

v.                                                Case No. 1:17-cv-508

LAWRENCE HOUGH, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Hubbard's Motion for Summary Judgment, (ECF No. 127); Defendant Eagle's Motion for Summary Judgment, (ECF No. 129); and Defendant Hough's Motion for Summary Judgment, (ECF No. 130).   The Court finds oral argument unnecessary.   W.D. Mich. LCivR 7.2(d).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions each be **granted in part and denied in part** as detailed herein.

## BACKGROUND

In her complaint, Plaintiff alleges the following.   (ECF No. 1).   On February 14, 2016, she travelled to the Chippewa Correctional Facility to visit her husband.   At the conclusion of this visit, Plaintiff was detained by Michigan Department of Corrections (MDOC) Inspector Pete Hubbard and Kinross Township Police Officer Paul Eagle.   Chippewa County Sheriff's Deputy Lawrence Hough subsequently joined the group.

Plaintiff was falsely accused of passing contraband to her husband.   Plaintiff was then handcuffed and threatened with "an additional charge of obstruction of justice if [she] did not consent to having her vehicle searched."   Hubbard also stated that he was going to "make sure Plaintiff was

never going to see her husband again."   Plaintiff's car keys were then seized and her vehicle searched. Marijuana was discovered in Plaintiff's vehicle at which point she was placed in a police vehicle. Hough informed Plaintiff that if she did not consent to a search of her hotel room, she would be charged with "transportation and possession of marijuana."   Plaintiff, under duress, consented to a search of her hotel room, where more marijuana was discovered.   Plaintiff's visitation privileges with her husband were subsequently terminated.

Plaintiff initiated the present action on June 5, 2017, against Hough, Eagle, and Hubbard alleging the following causes of action: (1) denial of her right to intimate association; (2) unreasonable search and seizure; (3) conspiracy to violate her rights; (4) common law conversion; (5) use of excessive force; (6) false arrest/imprisonment; (7) assault and battery; (8) ordinary negligence; and (9) negligent infliction of emotional distress.   Plaintiff seeks an unspecified amount in money damages.   Defendants Hough, Eagle, and Hubbard now move for summary judgment.   Defendants also argue that they are entitled to qualified immunity.

## LEGAL STANDARDS

**A.        Summary Judgment**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible

evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other

-3-

than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).   The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.   Thus, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**B.**        **Qualified Immunity**

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation.   *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).   As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated.   *Ibid.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.   *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve.   *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."   *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).   If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity.   *Ibid.*   On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted.   The

defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Ibid.*   The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005).

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself."   *Fisher*, 398 F.3d at 845.   In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting."   *Fisher*, 398 F.3d at 845-46.   In short, "existing precedent must have placed the statutory or constitutional question beyond debate."   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## <u>ANALYSIS</u>

I.          **Fourth Amendment**   (Counts II, V and VI)

Plaintiff argues that her Fourth Amendment right to be free from unreasonable search and seizure was violated in multiple ways throughout the course of the subject incident.   The parties have all identified or presented various evidence in support of their respective positions.   However, because Defendants are moving for summary judgment, the facts must be viewed in a light most favorable to Plaintiff.   The facts relevant to these claims, when viewed in Plaintiff's favor, reveal the following.

On February 14, 2016, Plaintiff travelled to the Chippewa Correctional Facility (UCF) to visit her husband, Lonnell Haywood.   (ECF No. 128-3 at PageID.833).   When Plaintiff arrived at

the facility, she parked her car on prison property.   (*Ibid.*).   Before being permitted to meet with her husband, Plaintiff was subjected to a search.   (ECF No. 129-2 at PageID.944-45).   Upon meeting her husband in the prisoner visitation room, Plaintiff embraced her husband and the pair shared a kiss.[1] (ECF No. 128-6 at PageID.884).   During this kiss, Corrections Officer Cassandra Wilcox observed "what appeared to be a green object being passed by mouth from [Plaintiff] to Mr. Haywood."   (*Ibid.*). Plaintiff "had a difficult time getting the object into Mr. Haywood's mouth and Mr. Haywood had a difficult time swallowing the object."   (*Ibid.*).   Wilcox "observed the object as being dark green in color" and "believed it may have been marijuana."   (*Ibid.*).   Wilcox informed her supervisor what she observed.   (*Ibid.*).   Plaintiff's visit with her husband lasted approximately 90 minutes and was not interrupted or prematurely terminated.   (ECF No. 128-3 at PageID.833; ECF No. 129-2 at PageID.986; ECF No. 129-3 at PageID.1014).   The Chippewa Correctional Facility visitation guidebook provides that "a visit shall be *terminated*" if the visitor "smuggles, conspires to smuggle or attempts to smuggle *any* item into or out of the facility."   (ECF No. 128-3 at PageID.867) (emphasis added).

At the conclusion of her visit with her husband, Defendant Hubbard approached Plaintiff and asked her to accompany him.   (ECF No. 129-2 at PageID.947).   Defendant Hubbard was employed as an MDOC Corrections Officer.   (ECF No. 128-3 at PageID.832).   Plaintiff agreed and followed Hubbard to a nearby room where Defendant Eagle was waiting.   (ECF No. 129-2 at PageID.947).   Defendant Eagle was employed as a police officer with the Kinross Police Department.

---

[1] Plaintiff did not testify that she did not kiss her husband at the beginning of their visit, but instead simply asserted that she "did not recall" doing so.   (ECF No. 129-2 at PageID.945-46).   The Court further notes that in her verified complaint, Plaintiff alleges that she "affectionately embraced and kissed her husband" at the start of their visit.   (ECF No. 1 at PageID.3).

(ECF No. 130-3 at PageID.1115).   In response to questioning by Hubbard and Eagle, Plaintiff denied passing any illegal contraband to her husband and instead jokingly stated that she passed him a Jolly Rancher candy.[2]   (ECF No. 129-2 at PageID.947).   Hubbard and Eagle continued to detain Plaintiff for approximately 40 minutes, awaiting Defendant Hough's arrival.   (*Id.* at PageID.947-48, 982).   Defendant Hough was employed as an MDOC Inspector as well as a Chippewa County Deputy Sheriff.   (ECF No. 130-3 at PageID.1115).   Upon Hough's arrival, Plaintiff was escorted by Defendants Hough, Eagle, and Hubbard to the prison lobby where she was handcuffed.   (ECF No. 129-2 at PageID.948).

Defendant Hough then repeatedly threatened to take Plaintiff to jail unless she "consented" to a search of her vehicle.   (*Id.* at PageID.948-49).   Plaintiff eventually agreed to permit a search of her vehicle, but only because she "was scared to death."   (*Ibid.*).   Defendants Eagle and Hubbard proceeded to search Plaintiff's vehicle, discovering a small quantity of marijuana in the process.   (*Id.* at PageID.949).   Plaintiff was then placed in Defendant Hough's police vehicle.   (*Id.* at PageID.942-43).   Defendants Eagle and Hough first attempted to place Plaintiff in the rear seat of Hough's vehicle.   (*Ibid.*).   As Plaintiff attempted to enter the vehicle, Hough "was guiding [Plaintiff's] neck."   (*Ibid.*).   Plaintiff was experiencing difficulty, however, entering the vehicle at which point Defendant Eagle "went around to the other side of the car" and "proceeded to pull [Plaintiff's] hips. . .so [she] would fit in the car."   (*Id.* at PageID.976).   Plaintiff was unable, however, to enter the back seat, at which point she was placed in the front seat.   (*Id.* at PageID.942-43).   Defendants Hough and Eagle did not act maliciously and they were not attempting to hurt or injure

---

[2] While passing candy to a prisoner violates MDOC policy, Defendants have identified no statute or authority establishing that such is a criminal offense.

Plaintiff.   (*Id.* at PageID.958-59, 976-77).   Moreover, despite the pain and discomfort Plaintiff experienced when attempting to enter the back seat of Hough's vehicle, she did not request any help or treatment.   (*Id.* at PageID.959-60).   Throughout this encounter, Defendants Hough, Hubbard and Eagle made derogatory and racially motivated comments concerning the fact that Plaintiff, a white woman, is married to a black man.   (*Id.* at PageID.947, 950, 979-80, 987).

Hough then began threatening to take Plaintiff to jail if she did not permit him to search her hotel room.   (*Id.* at PageID.951).   Because she felt "threatened," Plaintiff agreed to allow Hough to search her hotel room.   (*Id.*).   Hough subsequently transported Plaintiff to her hotel room, travelling a route unfamiliar to Plaintiff at a high rate of speed which made Plaintiff afraid.   (*Id.* at PageID.949, 951-52).   On the way to the hotel, Hough detoured to assist at the scene of an accident. (*Id.* at PageID.951-52).   This detour lasted 20-30 minutes.   (*Id.* at PageID.959).   Plaintiff testified that she was afraid that Hough was "going to take [her] out and beat [her] to death."   (*Id.* at PageID.952).   Upon arriving at the hotel, a search of Plaintiff's room revealed another small quantity of marijuana, as well as an expired Michigan Medical Marijuana Program card.   (ECF No. 129-2 at 952-53; ECF No. 130-4 at PageID.1119).   Defendant Hough then transported Plaintiff back to the Chippewa Correctional Facility where Plaintiff was released from custody and informed that she would be notified if criminal charges were filed against her.   (ECF No. 129-2 at PageID.953). Plaintiff was later charged with misdemeanor possession of marijuana and a warrant for her arrest issued.   (ECF NO. 130-5 at PageID.1121).

A.      Search of Plaintiff's Vehicle

Because of its relevance to the discussion in the subsequent section, it is necessary to initially address Plaintiff's claim that the search of her vehicle was unlawful.   Plaintiff alleges that

while she permitted Defendants Hubbard and Eagle to search her vehicle, she did not freely consent to this search, but instead agreed to the search only because she "was scared to death."

The Fourth Amendment protects people from unreasonable searches and seizures. U.S. Const. amend. IV.   A warrantless search is presumptively unreasonable and satisfies the Fourth Amendment only in certain circumstances.   *See, e.g., Katz v. United States*, 389 U.S. 347, 357 (1967). In the absence of valid consent, a warrantless search is generally lawful only if there exists probable cause, although there exist certain exceptions to this general rule.   *See Spear v. Sowders*, 71 F.3d 626, 632-33 (6th Cir. 1995).   As the *Sowders* court observed, "we have made it clear that a government official does not need probable cause to conduct every search and that a prison visitor search falls into a special category."   *Ibid.*   As the court further indicated, a search of a vehicle located on prison property, based on something less than "individualized suspicion," is not unconstitutional, especially if the person has been warned that their car is subject to search.   *Ibid.*

According to Defendant Hubbard, located at the entrance to the Chippewa Correctional Facility is a visitor information board which includes a copy of the facility's visitation guidebook. (ECF No. 128-3 at PageID.834).   This guidebook clearly informs visitors that if there exists "suspicion" that a vehicle on prison property contains contraband, the vehicle may be searched.   (ECF No. 128-3 at PageID.849).   The visitation guidebook is also available to visitors in pamphlet form. (ECF No. 128-3 at PageID.834).   Plaintiff has not presented evidence that the visitor information board does not exist or that such does not contain a copy of the facility's visitation guidebook. Instead, Plaintiff merely asserts that she "did not see" the visitor information board and, furthermore, was not informed that the guidebook was available in pamphlet form.   (ECF No. 151 at PageID.1214). Plaintiff has identified no authority establishing that inattentiveness or willful ignorance is a legitimate

basis to claim exclusion from the prison's visitation rules and guidelines.   In sum, Plaintiff's assertions are not sufficient to create a genuine factual dispute on the question whether Plaintiff was informed, either expressly or implicitly, that her car was subject to search if it was suspected to contain contraband.

As noted above, Corrections Officer Wilcox observed Plaintiff passing to her husband an object which Wilcox suspected may have been (or contained) marijuana.   Based on the authority identified above, this constituted a sufficient basis to search Plaintiff's vehicle.   Because Defendants could have lawfully searched Plaintiff's car based upon Corrections Officer Wilcox's observations, the question whether the search of Plaintiff's vehicle was conducted pursuant to valid consent is irrelevant.   Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's claims that the search of her vehicle violated her Fourth Amendment rights.

B.     Initial Detention of Plaintiff

Absent a valid warrant, the seizure of a person is lawful only in certain circumstances. Other than when in the home, an individual can be arrested without a warrant if there exists probable cause to believe that the individual has committed or is committing a criminal offense.   *See, e.g., Graves v. Mahoning County*, 821 F.3d 772, 776 (6th Cir. 2016).   When assessing whether there existed probable cause to support an arrest, the Court must consider the totality of the facts and circumstances possessed by the arresting officer at the time of the arrest.   *See Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).   Probable cause does not require "convincing" evidence, but merely evidence "sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime."   *Ibid.*   While probable cause "is not a high bar," *District of Columbia v.*

-10-

*Wesby*, 138 S.Ct. 577, 586 (2018), a "mere suspicion of criminality" is insufficient.  *Bornhorst*, 513 F.3d at 511.

Where a police officer lacks probable cause, but possesses a "reasonable and articulable suspicion that a person has been involved in criminal activity," the officer may "briefly" detain the person "to investigate the suspicious circumstances."  *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004).  This is generally referred to as a *Terry* stop.  *Id.* at 585.  When analyzing the lawfulness of a purported *Terry* stop, the Court first assesses whether the initial detention was proper.  *See United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009).  If the initial detention was proper, the Court must then consider "whether the degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and surrounding circumstances."  *Ibid.*  To satisfy this latter element, the officer must have "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly."  *Foster*, 376 F.3d at 585.  An otherwise permissible *Terry* stop that "lasts longer than is necessary to effectuate the purpose of the stop" constitutes, in the absence of probable cause, an unlawful arrest in violation of the Fourth Amendment.  *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 827 (6th Cir. 2007).  Similarly, it violates the Fourth Amendment for an officer, having failed to obtain evidence or facts confirming his initial suspicion, to detain an individual so that a second officer can arrive and undertake a second investigation.  *Id.* at 829.

To assess the lawfulness of Plaintiff's "initial detention,"[3] it necessary to identify the facts and circumstances known to Defendants.  At the outset of Plaintiff's detention, Defendants

---

[3] For purposes of this discussion, the use of the term "initial detention" refers to the time beginning when Plaintiff was detained at the conclusion of the visit with her husband and ending when marijuana was discovered in her vehicle, at which point there existed probable cause to arrest Plaintiff.

Hubbard and Eagle knew two facts: (1) Corrections Officer Wilcox observed Plaintiff passing to her husband an object that Wilcox suspected "may have" been (or contained) marijuana; and (2) despite the prison's stated policy to terminate a visit where a visitor smuggles or attempts to smuggle *any* item into the facility, Plaintiff's visit with her husband was not interrupted or prematurely terminated.

These facts fall short of establishing probable cause to believe Plaintiff committed a crime.   *See* Mich. Comp. Laws § 800.281 (it is illegal to bringing a controlled substance into or onto a correctional facility or provide a controlled substance to a prisoner); *People v. Norman*, 438 N.W.2d 895, 897 (Mich. Ct. App. 1989) (recognizing that § 800.281 does not require specific intent). Wilcox's observation constitutes nothing more than a "mere suspicion of criminality" and the fact that Plaintiff's visit was not immediately terminated suggests that Wilcox and/or others harbored doubts whether the item Plaintiff allegedly passed to her husband was illegal contraband as opposed to, for example, a piece of candy.   Nevertheless, it was not unreasonable for Defendants to suspect that Plaintiff might be involved in criminal activity.   Thus, the initial detention of Plaintiff constituted a lawful *Terry* stop.

During their subsequent discussion with Plaintiff, Defendants Hubbard and Eagle learned the following additional facts: (1) Plaintiff denied passing any illegal contraband to her husband, and (2) Plaintiff jokingly stated that she passed her husband a piece of candy.[4]   These two facts could not reasonably have confirmed or advanced Defendants' initial suspicion that Plaintiff had passed illegal contraband to her husband.   These two additional facts did not eliminate the suspicion

---

[4] Defendants suggest that they also knew that Plaintiff's husband had acknowledged that he and Plaintiff passed a piece of candy during their visit.   However, Defendant Hough concedes in his affidavit that he did not speak with Plaintiff's husband until after the incidents giving rise to the present action.   (ECF No. 130-3 at PageID.1116).   Defendants Hubbard and Eagle have presented no evidence that they spoke with Plaintiff's husband prior to speaking with Plaintiff.

that Plaintiff was engaged in illegal activity, but neither did they advance or confirm such. As discussed above, Defendant Eagle could have, at this juncture, searched Plaintiff's vehicle based upon the suspicion that Plaintiff had passed illegal contraband to her husband. Defendants Hubbard or Eagle could likewise have interviewed Plaintiff's husband regarding their suspicions. However, instead of taking either of these steps which could have constituted a diligent attempt to confirm or dispel their suspicions, Defendants Hubbard and Eagle continued to detain Plaintiff for 40 minutes until Defendant Hough arrived. Plaintiff was then handcuffed and escorted to her vehicle where a search revealed marijuana.[5]

Until the moment marijuana was discovered in Plaintiff's vehicle, there did not exist probable cause to arrest Plaintiff. Moreover, the conduct from the time Plaintiff was initially detained through the discovery of marijuana in her vehicle, Defendants did not comply with the requirements of a lawful *Terry* stop. Once their conversation with Plaintiff revealed the two additional facts identified above, Defendants were obligated to either diligently attempt to obtain still more facts or simply release Plaintiff. Instead, Defendants Hubbard and Eagle detained Plaintiff for 40 minutes while awaiting the arrival of Defendant Hough. Defendants offer no rationale why Defendant Eagle, a police officer, needed to await Defendant Hough's arrival before searching Plaintiff's vehicle or otherwise continuing the investigation of Plaintiff's conduct. In sum, the actions of Defendants

---

[5] Because Plaintiff's medical marijuana card expired prior to the incident in question, her possession of marijuana subjected her to criminal penalty. *See, e.g, People v. Alzehery*, 2018 WL 472158 at *5 (Mich. Ct. App., Jan. 18, 2018) (to avoid prosecution for possession of marijuana on the ground that such is permitted by the Michigan Medical Marijuana Act (MMMA), the individual must possess a "valid" medical marijuana card); *People v. Brown*, 825 N.W.2d 91, 93-95 (Mich. Ct. App. 2012) (the MMMA "does not abrogate state criminal prohibitions related to marijuana," but instead constitutes a "very limited, highly restricted exception" to the proscription against the possession of marijuana).

Hubbard and Eagle, if Plaintiff's version of events is believed, constitutes an illegal detention of Plaintiff in violation of her Fourth Amendment rights.

As for Defendant Hough, while he did not arrive until later in the encounter, summary judgment is likewise not appropriate. Upon Defendant Hough's arrival, Plaintiff was handcuffed and threatened with arrest. Because no reasonable person in Plaintiff's position would have believed she could have terminated the encounter at that point, Plaintiff was effectively under arrest at that point despite the utter lack of probable cause. *See Gardenhire v. Schubert*, 205 F.3d 303, 313-14 (6th Cir. 2000). Thus, if Plaintiff's version of events is believed, Defendant Hough's conduct constitutes a violation of Plaintiff's rights.

Furthermore, none of the Defendants are entitled to qualified immunity as to this claim. It is clearly established that a *Terry* stop is lawful only if the officers act diligently to confirm or dispel their initial suspicions. Defendants Hubbard and Eagle could not reasonably have believed that declining to undertake a search of Plaintiff's vehicle, which may very well have been dispositive as to their initial suspicions, and instead detaining Plaintiff for 40 minutes while awaiting the arrival of a *second* police officer constitutes diligent behavior. *See Center for Bio-Ethical Reform*, 477 F.3d at 828-31. Likewise, Defendants Hubbard and Eagle could not reasonably have believed it was lawful, having failed to obtain evidence or facts confirming their initial suspicion, to detain Plaintiff for 40 minutes simply so that a second officer could arrive and attempt a second investigation. *Id.* at 829.

Likewise, Defendant Hough could not reasonably have believed that there existed probable cause to arrest Plaintiff prior to the discovery of marijuana in her vehicle. *See Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214-15 (6th Cir. 2011) (regarding an unlawful arrest claim, qualified immunity is not warranted where the officer "could not reasonably believe that he had

-14-

probable cause" to arrest the individual in question).   Accordingly, the undersigned recommends that as to Plaintiff's claim that she was unlawfully detained in violation of her Fourth Amendment rights, during the time period from the termination of her visit with her husband until the discovery of marijuana in her vehicle, that Defendants' motions for summary judgment all be denied.

C.    Use of Excessive Force

Plaintiff alleges that Defendants Eagle and Hough[6] employed excessive force when attempting to help her enter the back seat of Hough's police vehicle following the discovery of marijuana in her vehicle.   Plaintiff's claim is evaluated under an "objective-reasonableness standard" which examines the facts and circumstances from the perspective of a reasonable officer.   *Toner v. Village of Elkton*, 547 Fed. Appx. 720, 727 (6th Cir., Nov. 26, 2013).

If an individual is complying with an officer's directions, she has the right "to be free from gratuitous violence during arrest."   When assessing an excessive force claim, the question is not the extent of injury allegedly inflicted, but "whether an officer subjects a detainee to gratuitous violence."   Moreover, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."   *Ibid.*

As noted above, Plaintiff testified that Defendants attempted to "guide" and "pull" her into Defendant Hough's vehicle.   Plaintiff testified that Defendants did not act maliciously and were not attempting to hurt or injure her.   These facts, even interpreted in a light most favorable to Plaintiff, fail to demonstrate that she was subjected to excessive force.   *See, e.g., McColman v. St. Clair County*, 479 Fed. Appx. 1, 7 (6th Cir., Apr. 12, 2012) (grabbing person "by her upper arms and pulling [her]

---

[6] At her deposition, Plaintiff clarified that her excessive force claim was asserted against Defendants Eagle and Hough only.   (Page 221)

across the seat was not a gratuitous use of force, even if it did result in some minor bruising"). Accordingly, the undersigned recommends that as to Plaintiff's excessive force claims, Defendants Hough and Eagle are entitled to summary judgment.

        D.    Search of Plaintiff's Hotel Room

Plaintiff alleges that Defendant Hough violated her Fourth Amendment rights by undertaking an unlawful search of her hotel room. Defendant Hough maintains that Plaintiff freely consented to the search whereas Plaintiff testified at her deposition that she consented under duress prompted by Defendant Hough's threats.

Whether consent to conduct a search was voluntarily given, or was instead the product or coercion or duress, is determined by examining the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). From Plaintiff's perspective, by the time she allegedly consented to the search of her hotel room, she had already been subjected to an illegal seizure, her car had been searched against her wishes, she had been subjected to offensive and racially motivated comments concerning her marriage, and she had been threatened with arrest and transport to jail for a crime which she not unreasonably, albeit incorrectly, believed she had not committed. Defendant Hough has failed to establish the absence of a genuine factual dispute regarding the voluntariness of Plaintiff's consent to search her hotel room. Accordingly, as to Plaintiff's claim that Defendant Hough conducted an unlawful search of her hotel room, the undersigned recommends that Defendant Hough's motion for summary judgment be denied.

**II.**       **Right of Intimate Association**  (Count I)

On February 17, 2016, three days after the events giving rise to this action, Defendant Hough submitted a Notice of Proposed Visitor Restriction recommending that Plaintiff be prohibited

from visiting her husband.   (ECF No. 151-2 at PageID.1279).   Hough based his recommendation on

the conclusion that Plaintiff had smuggled contraband to her husband during their February 14, 2016

visit and, furthermore, that Plaintiff had committed a misdemeanor by bringing marijuana onto prison

property.   (ECF No. 151-2 at PageID.1279).   Following an administrative hearing, the warden

imposed a permanent restriction prohibiting Plaintiff from visiting her husband.   (ECF No. 151-2 at

PageID.1280).   Plaintiff alleges that Defendants' participation in the events leading up to the

imposition of this visitation restriction violates her constitutional right to freedom of intimate

association.

In *Overton v. Bazzetta*, 539 U.S. 126 (2003), the Court assessed the constitutionality of

various visitation restrictions imposed by the MDOC.   With respect to the right of intimate

association, the Court observed:

> We have said the Constitution protects "certain kinds of highly personal
> relationships."   And outside the prison context, there is some
> discussion in our cases of a right to maintain certain familial
> relationships, including association among members of an immediate
> family and association between grandchildren and grandparents.   This
> is not an appropriate case for further elaboration of those matters.   The
> very object of imprisonment is confinement.   Many of the liberties and
> privileges enjoyed by other citizens must be surrendered by the prisoner.
> An inmate does not retain rights inconsistent with proper incarceration.
> And, as our cases have established, freedom of association is among the
> rights least compatible with incarceration.   Some curtailment of that
> freedom must be expected in the prison context.   We do not hold, and
> we do not imply, that any right to intimate association is altogether
> terminated by incarceration or is always irrelevant to claims made by
> prisoners.   We need not attempt to explore or define the asserted right
> of association at any length or determine the extent to which it survives
> incarceration because the challenged regulations bear a rational relation
> to legitimate penological interests.

*Id.* at 131-32 (internal citations omitted).

-17-

Moreover, this logic applies equally to non-prisoners such as Plaintiff. *See, e.g., King v. Caruso*, 542 F.Supp.2d 703, 713 (E.D. Mich. 2008) ("the fact that this Plaintiff is not a state prisoner does not give her greater constitutional rights [with respect to prison visitation]"). The relevant question, therefore, is whether the regulation or restriction at issue advances legitimate penological interests. This requires the Court to balance Plaintiff's rights against the need to maintain prison safety and security and the deference which courts afford to the decisions by prison administrators to accomplish such.

The standard by which this balancing occurs was articulated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). The *Turner* Court concluded that "when a prison regulation impinges on an individual's constitutional rights, the regulation is nevertheless valid if it is "reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

> 1.   there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> 2.   whether there are alternative means of exercising the right that remain open to prison inmates;
>
> 3.   the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> 4.   whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

-18-

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors.   If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest.   It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."   Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest.   *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."   *Overton*, 539 U.S. at 132.   This statement clearly places on Plaintiff the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor.   As subsequent courts have concluded, the burden with respect to the first *Turner* factor rests with prison officials.   *See Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005); *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").   The Court concludes, therefore, that with respect to the *Turner* factors, Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such.   This burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156.

-19-

As noted above, there exists evidence that on the date in question, Plaintiff passed contraband to her husband. There likewise exists evidence that Plaintiff and her husband passed contraband on previous visits. (ECF No. 129-2 at PageID.960). While it may be the case that Plaintiff and her husband only passed pieces of candy, the fact remains that even passing candy violations prison rules, as Plaintiff acknowledged. (*Id.* at PageID.951). Moreover, it is not disputed that Plaintiff transported a controlled substance onto prison grounds. It cannot reasonably be disputed that prisons have a legitimate interest in preventing prisoners from passing or receiving contraband. Likewise, it cannot reasonably be disputed that prisons have a legitimate interest in limiting the visitation privileges of prisoners or other individuals who possess, pass, or bring onto prison grounds contraband or illegal drugs. *See Overton*, 539 U.S. at 134 ("withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior").

Consideration of the remaining factors also weighs against Plaintiff's claim. It would certainly impose an unreasonable burden and risk on prison officials to permit visitation between a prisoner and a family member who brings illegal drugs onto prison property and who is known to pass contraband to the prisoner. There is no evidence that Plaintiff and her husband cannot communicate in other ways such as phone calls or letters. There is also no evidence that Plaintiff is precluded from seeking the termination of the visitation limitation in the future. Accordingly, as to Plaintiff's intimate association claims, the undersigned recommends that Defendants are entitled to summary judgment. In the alternative, the undersigned recommends that Defendants are entitled to qualified immunity in light of the *Overton* decision and Plaintiff's failure to identify authority that the MDOC regulations pursuant to which this visitation limitation was imposed have been found to be unlawful.

-20-

III.        **Civil Conspiracy**   (Count III)

Plaintiff alleges that Defendants conspired to violate her constitutional rights in violation of 42 U.S.C. § 1983.   A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action."   *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016).   To prove a conspiracy under § 1983, Plaintiff must establish: (1) the existence of a single plan; (2) the conspirators shared in the general conspiratorial objective; and (3) an overt act was committed in furtherance of the conspiracy.   *Ibid.*   While the existence of a conspiracy can be established through circumstantial evidence, "vague and conclusory allegations unsupported by material facts" are insufficient.   *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011).

To defeat a motion for summary judgment, a conspiracy claim based upon circumstantial evidence must be "sufficient to reasonably infer the existence of a conspiracy." *Womack v. Conley*, 595 Fed. Appx. 489, 494 (6th Cir., Dec. 11, 2014).   However, where the circumstantial evidence is "just as consistent with independent conduct as it is with a conspiracy," summary judgment for the defendant(s) is appropriate.   *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012); *Womack*, 595 Fed. Appx. at 494.

During her deposition, Plaintiff conceded that she lacked any direct evidence to support her allegations of conspiracy.   (ECF No. 129-2 at PageID.979-80).   In her response to the present motion, Plaintiff argues that there exists circumstantial evidence to support her claim.   (ECF No. 152 at PageID.1307-10).   The circumstantial evidence which Plaintiff relies upon tracks the factual allegations in her complaint.   However, relative to Plaintiff's conspiracy claims, these allegations are vague and equally consistent with "independent conduct."   Moreover, much of Plaintiff's argument focuses on her mistaken assertion that her possession of marijuana on the date in question did not

-21-

violate Michigan law.   Accordingly, the undersigned recommends that with respect to Plaintiff's civil conspiracy claims, Defendants are all entitled to summary judgment.

**IV.**        **Assault and Battery**  (Count VII)

Plaintiff alleges that Defendants committed assault and battery against her. Defendants assert that Michigan law entitles them to immunity.   Under Michigan law, assault "may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."  *People v. Starks*, 701 N.W.2d 136, 140 (Mich. 2005).   Battery is defined as "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person."  *Ibid.*

Under Michigan law, employees of governmental agencies are afforded immunity from tort liability if the following criteria are satisfied: (1) the employee was acting within the scope of his employment; (2) the agency in question was engaged in the exercise or discharge of a governmental function; and (3) the employee's conduct "does not amount to gross negligence that is the proximate cause of the injury or damage."  *See Beals v. Michigan*, 871 N.W.2d 5, 9 (Mich. 2015); Mich. Comp. Laws § 691.1407(2).   Gross negligence is defined under Michigan law as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  *Horne v. Suburban Mobility Authority for Regional Transportation*, 2014 WL 2159397 at *3 (Mich. Ct. App., May 22, 2014).

Plaintiff's claims, while vaguely articulated, appear to center on her assertion that Defendants used excessive force when attempting to help her into Defendant Hough's police vehicle. As discussed above, however, Defendants did not use excessive force.   The conclusion that Defendants did not use excessive force during the incident in question forecloses any claim for assault or battery.  *See, e.g., Gaddis v. Redford Twp.*, 2004 WL 243363 at *4 (Mich. Ct. App., Feb. 10, 2004).

Plaintiff has likewise failed to present evidence from which a reasonable person could conclude that Defendants acted with gross negligence during the encounter. Accordingly, with respect to Plaintiff's assault and battery claims, the undersigned recommends that Defendants are entitled to summary judgment.

## V.        Common Law Conversion   (Count IV)

Plaintiff claims that during the course of the incident in question Defendants unlawfully converted her marijuana, vehicle, and cell phone. Under Michigan law, common law conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Victory Estates, L.L.C. v. NPB Mortgage, L.L.C.*, 2012 WL 6913826 at *2 (Mich. Ct. App., Nov. 20, 2012).

With respect to the marijuana seized from Plaintiff's vehicle and hotel room, because Plaintiff's possession of such was unlawful, the seizure and retention of such was lawful and, therefore, cannot constitute conversion. As for Plaintiff's vehicle, Defendants did not wrongfully exert domain over such, but instead conducted a lawful search thereof which does not constitute conversion. With respect to Plaintiff's claim that Defendant Hubbard unlawfully converted her cell phone, Plaintiff's deposition testimony reveals otherwise.

Plaintiff testified that during the search of her vehicle, her cell phone, which was located therein, began ringing. (ECF No. 129-2 at PageID.983-84). Hubbard then allegedly "reached for" the phone, at which point Plaintiff objected, telling Hubbard that he was not authorized to answer her phone. (*Id.* at PageID.984). In response, Hubbard "did not" answer or otherwise interfere with Plaintiff's phone. (*Ibid.*). Thus, Defendant Hubbard did not exert domain over Plaintiff's phone. Furthermore, Plaintiff has failed to present evidence from which a reasonable

person could conclude that Defendants acted with gross negligence during the incidents in question. Accordingly, with respect to Plaintiff's conversion claims, the undersigned recommends that Defendants are all entitled to summary judgment.

**VI.**          **Negligence**  (Count VIII)

Finally, Plaintiff alleges that Defendants committed negligence resulting in "injuries and other losses."  Plaintiff has failed to clearly articulate the nature or basis for this claim. Regardless, Defendants are entitled to relief because Plaintiff has failed to present evidence from which a reasonable person could conclude that Defendants acted with gross negligence at any point during the events in question.   Accordingly, with respect to Plaintiff's negligence claims, the undersigned recommends that Defendants are all entitled to summary judgment.

<u>**CONCLUSION**</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendant Hubbard's Motion for Summary Judgment</u>, (ECF No. 127), be **granted in part and denied in part**; <u>Defendant Eagle's Motion for Summary Judgment</u>, (ECF No. 129), be **granted in part and denied in part**; and <u>Defendant Hough's Motion for Summary Judgment</u>, (ECF No. 130), be **granted in part and denied in part**.   Specifically, the undersigned recommends that Defendants are entitled to relief as to all Plaintiff's claims, except: (1) Plaintiff's claim, asserted against Defendants Hough, Hubbard, and Eagle, that she was subjected to an illegal detention during the time period from the termination of her visit with her husband until the discovery of marijuana in her vehicle, and (2) Plaintiff's claim, asserted against Defendant Hough, that the search of her hotel room was unlawful.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).

-24-

Failure to file objections within the specified time waives the right to appeal the District Court's order.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: April 25, 2019

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

-25-