UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA HAYWOOD,

       Plaintiff,                                  Hon. Robert J. Jonker

v.                                                   Case No. 1:17-cv-508

LAWRENCE HOUGH, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Eagle's Motion for Summary Judgment (ECF No. 194), Defendant Hough's Motion for Summary Judgment (ECF No. 195), Defendant Hubbard's Motion for Summary Judgment (ECF No. 199), and Plaintiff's Motion to Strike (ECF No. 207). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be denied, Defendants' motions be granted, and this matter terminated.

**BACKGROUND**

In her complaint, Plaintiff alleges the following. (ECF No. 1). On February 14, 2016, she travelled to the Chippewa Correctional Facility to visit her husband. At the conclusion of this visit, Plaintiff was detained by Michigan Department of Corrections (MDOC) Inspector Pete Hubbard and Kinross Township Police Officer Paul Eagle. Chippewa County Sheriff's Deputy Lawrence Hough subsequently joined the group.

Plaintiff was falsely accused of passing contraband to her husband. Plaintiff was handcuffed and threatened with "an additional charge of obstruction of justice if [she] did not consent to having her vehicle searched." Hubbard also stated that he was going to "make sure Plaintiff was never going to see her husband again." Plaintiff's car keys were seized and her vehicle searched. Marijuana was discovered in Plaintiff's vehicle at which point she was arrested. Hough informed Plaintiff that, if she did not consent to a search of her hotel room, she would be charged with "transportation and possession of marijuana." Plaintiff, under duress, consented to a search of her hotel room, where more marijuana was discovered. Plaintiff's visitation privileges with her husband were subsequently terminated.

Plaintiff initiated the present action against Hough, Eagle, and Hubbard alleging various causes of action: (1) denial of her right to intimate association; (2) illegal search and seizure; (3) conspiracy to violate her rights; (4) common law conversion; (5) use of excessive force; (6) false arrest/imprisonment; (7) assault and battery; (8) ordinary negligence; and (9) negligent infliction of emotional distress. Most of Plaintiff's claims have been dismissed. (ECF No. 159, 170, 187). At this juncture, the only claims remaining are false arrest claims against Defendants Hough, Eagle, and Hubbard; and an illegal search claim against Defendant Hough. Defendants now move for summary judgment. Plaintiff has not responded to Defendants' motions, but has instead moved the Court to strike Defendants' motions.

## LEGAL STANDARDS

**A.  Summary Judgment**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."  *Harden v. Hillman*, - - - F.3d - - -, 2021 WL 1257802 at *4 (6th Cir., Apr. 6, 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon*

*Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).  Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

**B.    Qualified Immunity**

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly terminated. *Ibid.* When government officials perform discretionary functions, they are shielded from liability for civil damages unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018).

A law is considered clearly established only if, at the time the officer acted, "the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Ibid*. To be clearly established, a legal principle must be "settled law. . .dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90. The "clearly established" standard also requires that "the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* at 590. In other words, the contours of the rule in question "must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

As the Supreme Court has emphasized, "[t]his requires a high degree of specificity." *Ibid*. Because this specificity requirement is "especially important in the Fourth Amendment context," to deny a claim of qualified immunity, the opposing party must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Ibid.*; *see also*, *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (if a defendant asserts qualified immunity, the burden shifts to the plaintiff "to demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right").

## ANALYSIS

### I.     Plaintiff's Motion to Strike

As previous noted, Plaintiff has failed to respond to the merits of Defendants' motions, despite being afforded more than five months to do so.   (ECF No. 202-06). Instead, Plaintiff moves the Court to strike Defendants' motions on the ground that they improperly permit Defendants "a second bite at the apple," in violation of the Case Management Order, and, furthermore, subjects Plaintiff to "egregious[] prejudic[e]."

The Court has entered three Case Management Orders in this matter.   (ECF No. 21, 102-03).    While each of these Orders establishes a deadline by which motions for summary judgment must be filed, none of these Orders limits the parties to a single dispositive motion.   Thus, contrary to Plaintiff's assertion, the filing of the present motions for summary judgment does not violate any of this Court's previous Orders. Moreover, even if the Court had previously limited the parties to a single dispositive motion, the Court may, at its discretion, permit the filing of additional such motions. *See, e.g., Dietz v. Bouldin*, 136 S.Ct. 1885, 1892 (2016) ("district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases").    Finally, Plaintiff's argument ignores the Sixth Circuit's order to this Court to specifically hear and resolve certain legal questions, which necessitates the filing of additional motions for summary judgment.    Accordingly, the undersigned recommends that Plaintiff's motion to strike be denied.

## II.     Defendants' Motions

Plaintiff alleges that Defendants Hubbard, Eagle, and Hough each violated her Fourth Amendment right to be free from unreasonable seizure. Before analyzing each Defendant's specific arguments, an articulation of certain relevant facts is helpful. Interpreted in Plaintiff's favor, these facts reveal the following. Additional facts, relevant to each specific Defendant's arguments, will be discussed below.

On February 14, 2016, Plaintiff travelled to the Chippewa Correctional Facility (UCF) to visit her husband, Lonnell Haywood. (ECF No. 128-3, PageID.833). When Plaintiff arrived at the facility, she parked her car on prison property. (*Ibid.*). Upon meeting her husband in the prisoner visitation room, Plaintiff embraced her husband and the pair kissed. (ECF No. 1, PageID.3; ECF No. 128-6, PageID.884; ECF No. 129-2, PageID.945-46). During this kiss, Corrections Officer Cassandra Wilcox observed "what appeared to be a green object being passed by mouth from [Plaintiff] to Mr. Haywood." (ECF No. 128-6, PageID.884). Plaintiff "had a difficult time getting the object into Mr. Haywood's mouth and Mr. Haywood had a difficult time swallowing the object." (*Ibid.*). Wilcox "observed the object as being dark green in color" and "believed it may have been marijuana." (*Ibid.*). Wilcox informed her supervisor what she observed. (*Ibid.*).

At the conclusion of her visit with her husband, Defendant Hubbard approached Plaintiff and asked her to accompany him. (ECF No. 129-2, PageID.947). Defendant Hubbard was employed as an MDOC Corrections Officer. (ECF No. 128-3, PageID.832).

Plaintiff agreed and followed Hubbard to a nearby room where Defendant Eagle was waiting. (ECF No. 129-2, PageID.947). Defendant Eagle was employed as a police officer with the Kinross Police Department. (ECF No. 130-3, PageID.1115). In response to questioning by Hubbard and Eagle, Plaintiff denied passing any illegal contraband to her husband and instead jokingly stated that she passed him a Jolly Rancher candy. (ECF No. 129-2, PageID.947). Hubbard and Eagle continued to detain Plaintiff for approximately forty minutes, awaiting Defendant Hough's arrival. (*Id.*, PageID.947-48, 982). Defendant Hough was employed as an MDOC Inspector as well as a Chippewa County Deputy Sheriff. (ECF No. 130-3, PageID.1115). Upon Hough's arrival, Plaintiff was escorted by Defendants Hough, Eagle, and Hubbard to the prison lobby where she was handcuffed. (ECF No. 129-2, PageID.948).

Defendant Hough then repeatedly threatened to take Plaintiff to jail unless she "consented" to a search of her vehicle. (*Id.*, PageID.948-49). Plaintiff eventually agreed to permit a search of her vehicle, but only because she "was scared to death." (*Ibid.*). Defendants Eagle and Hubbard proceeded to search Plaintiff's vehicle, discovering a small quantity of marijuana. (*Id.*, PageID.949). Plaintiff was then placed in Defendant Hough's police vehicle. (*Id.*, PageID.942-43). Hough then began threatening to take Plaintiff to jail if she did not permit him to search her hotel room. (*Id.*, PageID.951). Because she felt "threatened," Plaintiff agreed to allow Hough to search her hotel room. (*Id.*). Hough subsequently transported Plaintiff to her hotel room, travelling a route unfamiliar to Plaintiff at a high rate of speed, which made

Plaintiff afraid.  (*Id.*, PageID.949, 951-52).  On the way to the hotel, Hough detoured to assist at the scene of an accident.  (*Id.*, PageID.951-52).  This detour lasted twenty to thirty minutes.  (*Id.*, PageID.959).  Plaintiff was afraid that Hough was "going to take [her] out and beat [her] to death."  (*Id.*, PageID.952).  Upon arriving at the hotel, a search of Plaintiff's room revealed another small quantity of marijuana, as well as an expired Michigan Medical Marijuana Program card.  (ECF No. 129-2, 952-53; ECF No. 130-4, PageID.1119).  Defendant Hough then transported Plaintiff back to the Chippewa Correctional Facility where she was released from custody.  (ECF No. 129-2, PageID.953).  Plaintiff was later charged with misdemeanor possession of marijuana. (ECF No. 130-5, PageID.1121).

    A.    Defendant Eagle

Plaintiff alleges that Defendant Eagle violated her Fourth Amendment right to be free from unreasonable seizure.  The Court previously denied relief to Defendant Eagle on the ground that the facts, interpreted in Plaintiff's favor, permitted a reasonable juror to find that Eagle, after lawfully detaining Plaintiff, failed to diligently investigate the matter to confirm or dispel his initial suspicions.  (ECF No. 159, PageID.1367-71). Thus, a reasonable juror could conclude that the initial lawful detention of Plaintiff, based upon reasonable suspicion, eventually constituted an arrest without probable cause in violation of Plaintiff's Fourth Amendment rights.  (*Id.*).

On the question of qualified immunity, the Court rejected such on the ground that Defendant Eagle "could not reasonably have believed it was lawful, having failed to obtain evidence or facts confirming [his] initial suspicion, to detain Plaintiff for 40 minutes simply so that a second officer could arrive and attempt a second investigation." (*Id.*, PageID.1371). The Sixth Circuit vacated the denial of Defendant Eagle's motion for summary judgment. Specifically, the Sixth Circuit remanded the matter to this Court "to determine in the first instance whether it was clearly established on February 14, 2016 that Eagle did not have probable cause to arrest [Plaintiff]." *Haywood*, 811 Fed. Appx. at 962. Defendant Eagle now moves for relief on the ground that he is entitled to qualified immunity.

Defendant Eagle has submitted a sworn statement in which he asserts the following. (ECF No. 129-3, PageID.1014-16). Shortly after noon, on February 14, 2016, he was dispatched to the Chippewa Correctional Facility to meet with Inspector Hubbard who had requested "assistance from the Sheriff's Department." (*Id.*, PageID.1014). Hubbard informed Eagle that Plaintiff had been observed by a corrections officer "passing something to a prisoner during an allowable kiss, and that the item was reportedly green in color and suspected to be some sort of narcotic." (*Id.*). Plaintiff has presented no evidence refuting these assertions.

As of February 14, 2016, it was a felony under Michigan law for a person to provide illegal drugs to a prisoner. Mich. Comp. Laws §§ 800.281, 800.285. The Court recognizes that Defendant Eagle neither observed Plaintiff's interaction with her

-10-

husband nor spoke with the corrections officer who observed Plaintiff allegedly pass marijuana to her husband. In other words, the information Eagle possessed when he arrived at the facility was based upon hearsay. Nevertheless, hearsay from a "credible source" can constitute probable cause to support a lawful arrest. *See, e.g., Sinclair v. Lauderdale County, Tennessee*, 652 Fed. Appx. 429, 437-38 (6th Cir., June 21, 2016). Plaintiff has presented no evidence suggesting that the corrections officer who reported Plaintiff's conduct lacks credibility or is otherwise unworthy of belief.

Probable cause "does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Sinclair*, 652 Fed. Appx. at 438. Plaintiff has failed to identify, and the Court has not located, authority holding or even suggesting that it violated the Fourth Amendment to arrest an individual in circumstances similar to those that confronted Defendant Eagle. Because it was not clearly established, as of February 14, 2016, that Plaintiff had a Fourth Amendment right not to be arrested based on the facts and circumstances described above, Defendant Eagle is entitled to qualified immunity. Accordingly, the undersigned recommends that Defendant Eagle's motion for summary judgment be granted.[1]

---

[1] As the Court indicated in its previous Report and Recommendation, Plaintiff's visit with her husband lasted approximately ninety minutes and was not interrupted or prematurely terminated. (ECF No. 128-3, PageID.833; ECF No. 129-2, PageID.986; ECF No. 129-3, PageID.1014). The Chippewa Correctional Facility visitation guidebook provides that "a visit shall be *terminated*" if the visitor "smuggles, conspires to smuggle

B. Defendant Hubbard

Plaintiff alleges that Defendant Hubbard likewise violated her Fourth Amendment right to be free from unreasonable seizure. As the Sixth Circuit has already concluded, Defendant Hubbard may not assert qualified immunity in this matter, but instead may assert good faith as a defense to Plaintiff's claims. *Haywood v. Hough*, 811 Fed. Appx. 952, 958 (6th Cir., Apr. 30, 2020). Pursuant to the good faith defense, a plaintiff cannot maintain a claim against a defendant who acted in good faith reliance on then-existing law. *See Lee v. Ohio Education Association*, 951 F.3d 386, 389-91 (6th Cir. 2020). Defendant Hubbard now moves for relief on the ground that, with respect to the events at issue, he acted in good faith and, therefore, cannot be held liable for any violation of Plaintiff's Fourth Amendment rights he may have committed.

After being informed that Plaintiff passed an item to her husband suspected to be marijuana, a felony under Michigan law, Hubbard contacted Defendant Eagle, a local law enforcement officer, and requested that he respond to the facility to investigate the matter. (ECF No. 128-3, PageID.833). Defendant Hubbard asserts that, while he "is not a 'peace officer,' in his position of MDOC Inspector and under the guidance of an actual 'peace officer,' he believed in good faith" that there existed probable cause "to

---

or attempts to smuggle *any* item into or out of the facility." (ECF No. 128-3, PageID.867) (emphasis added). As the Court previously observed, this evidence certainly undermines the assertion that Plaintiff had passed marijuana to her husband. But Plaintiff has presented no evidence that these facts were known by Defendant Eagle prior to the events in question.

detain Plaintiff so that a thorough investigation could be conducted." (ECF No. 200, PageID.1601).

As discussed above, Defendant Eagle is entitled to summary judgment because there did not exist, as of February 14, 2016, clearly established authority indicating that Eagle's actions violated Plaintiff's Fourth Amendment rights. Stated differently, Defendant Eagle's actions were not unreasonable as there did not exist authority indicating that such were unlawful. In light of such, Defendant Hubbard's reliance on Defendant Eagle's assessment that Plaintiff's detention was lawful constitutes a good faith reliance on then-existing law, which entitles him to relief. Accordingly, the undersigned recommends that Defendant Hubbard's motion for summary judgment be granted.

   C.  Defendant Hough – Illegal Seizure

Plaintiff alleges that Defendant Hough also violated her Fourth Amendment right to be free from unreasonable seizure. Defendant now moves for summary judgment on the ground that he is entitled to qualified immunity. While Hough did not interact with Plaintiff until much later in the encounter, he is entitled to qualified immunity for the same reason Defendant Eagle is entitled to such relief.

As the Court previously concluded, interpreting the facts in a light most favorable to Plaintiff, a reasonable juror could conclude that, by the time Hough arrived at the facility, the encounter between Plaintiff, Eagle, and Hubbard had progressed beyond a *Terry* stop and become a custodial arrest. As discussed above, however, as of this date,

it was not clearly established that such violated Plaintiff's Fourth Amendment rights. This same analysis applies to Defendant Hough.

Prior to arriving at the facility, Defendant Hough, just like Defendant Eagle, was informed that Plaintiff had been observed by a Corrections Officer passing suspected marijuana to her husband. (ECF No. 130-3, PageID.1115). Thus, while Plaintiff alleges that Defendant Hough, like Defendant Eagle, subjected her to an unlawful seizure, Hough is entitled to qualified immunity for the same reasons articulated above. The undersigned, therefore, recommends that Defendant Hough's motion for summary judgment be granted.

  D.  Defendant Hough – Illegal Search

Finally, Plaintiff alleges that the subsequent search of her hotel room by Defendant Hough violated her Fourth Amendment right to be free from unreasonable searches. The Court previously denied Defendant Hough's motion for summary judgment on this claim on the ground that a reasonable juror could conclude that Plaintiff did not consent to the search of her hotel room.

The Sixth Circuit vacated this determination, however, and remanded the matter to this Court for a determination whether Hough is entitled to qualified immunity. *Haywood*, 811 Fed. Appx. at 962-63. In this respect, the Sixth Circuit observed that "even if Haywood did not genuinely consent to the search, Hough would still be entitled to qualified immunity unless no reasonable officer in his position could have mistakenly believed that she had consented." *Ibid.*

Whether consent to conduct a search was voluntarily given, or was instead the product of coercion or duress, is determined by examining the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Even interpreted in a light most favorable to Plaintiff, a reasonable officer could honestly have believed that Plaintiff consented to the search of her hotel room. Accordingly, the Court finds that Defendant Hough is entitled to qualified immunity.

Plaintiff testified that Defendant Hough told her she would be taken to jail if she did not consent to the search of her hotel room. (ECF No. 130-2, PageID.1074). It must be noted, however, that by the time Hough asked Plaintiff for consent to search her hotel room, marijuana had already been discovered in Plaintiff's vehicle. Because Plaintiff's vehicle was located on an MDOC facility, this circumstance constituted a felony offense for which she could have immediately been transported to jail.

Defendant Hough asserts in his affidavit that he wanted to search Plaintiff's hotel room to "clear up any remaining doubt about whether [Plaintiff] passed narcotics to her husband during the visit." (ECF No. 130-3, PageID.1116). Plaintiff concedes that she consented to the search of her hotel room because she "had a medical marijuana card" and "had nothing to hide." (ECF No. 130-2, PageID.1074).

According to Plaintiff, the drive from the prison to her hotel room was "rather short" during which time she and Hough had a "very pleasant" and "very nice" conversation. (*Id.*, PageID.1072-73, 1075). According to Plaintiff, Hough conducted himself during their encounter like a "gentleman" and Hough did not make disparaging

comments about her marriage as Defendants Hubbard and Eagle allegedly did. (*Id.*, PageID.1072, 1098, 1108).

Considering the totality of the circumstances, a reasonable officer could easily have determined that Plaintiff's consent to search her hotel room was completely voluntary rather than the product of threats or duress. As previously noted, once marijuana was discovered in Plaintiff's vehicle, she could have immediately been transported to jail and charged with a felony. Instead, in light of Plaintiff's assertion that she possessed, in her hotel room, a Medical Marijuana card, Hough requested to search Plaintiff's hotel room so that he could, in effect, assess whether the presence of marijuana in Plaintiff's vehicle was an honest mistake or instead constituted evidence that Plaintiff had, in fact, attempted to pass marijuana or other controlled substances to her husband. Plaintiff's concession that she consented to search of her hotel room because she "had nothing to hide" suggests that Plaintiff understood that it was actually in her best interests to allow Hough to search her hotel room. This interpretation is further supported by the fact that, despite finding a small amount of marijuana in Plaintiff's hotel room, Hough did not take Plaintiff to jail or charge her with a felony offense for transporting marijuana on to an MDOC facility, but instead transported her back to her vehicle and released her from custody.

Simply stated, a reasonable officer could have believed that Plaintiff consented to the search of her hotel room, not out of duress or fear, but because she understood such to be in her best interests. Moreover, Plaintiff has failed to identify, and the Court has not located, any authority holding or even suggesting that an officer in Defendant Hough's circumstance would have known that Plaintiff's consent was not voluntary or that his subsequent search of her hotel room violated the Fourth Amendment. Accordingly, the undersigned, finding that Defendant Hough is entitled to qualified immunity, recommends that Hough's motion for summary judgment be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion to Strike (ECF No. 207) be denied, Defendants' Motions for Summary Judgment (ECF No. 194, 195, and 199) be granted, and this matter terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 26, 2021

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge